UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENGENIUM SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | Case No. 4: 10-cv-4412 |
| | § | |
| STEVE CARR and | § | Jury Trial Demanded |
| SYMPHONIC TECHNOLOGIES, INC. | § | |
| | § | |
| Defendants | § | |

## DEFENDANTS' OBJECTIONS TO AND MOTION TO EXCLUDE TESTIMONY EXPERT REPORT OF KRISHNA MUPPAVARAPU

To the Honorable United States District Court:

Steve Carr and Symphonic Technologies, Inc. (collectively "Defendants"), file this Motion to Exclude Plaintiff's Expert Witness and would respectfully show the Court the following:

This case is a suit by Plaintiff against Defendant Symphonic for infringement of an alleged copyright interest in certain software titled "Engenium Workbench". Plaintiff alleges, variously that Symphonic copied "Engenium Workbench", repackaged it and sold and is selling it as a product called "Harmonix", causing harm to Plaintiff.

Engenium now identifies Krishna Muppavarapu as its expert witness and offers him to testify about the alleged "similarities between software developed by Engenium Solutions, Inc. and Symphonic Technologies, Inc." Federal R. Evid. 702 allows expert testimony if the expert is qualified to give an expert opinion. *Hendrix v. Evenflo Co.*, 609

F.3d 1183, 1194 (11th Cir. 2010). After this threshold matter is bridged, the expert's proposed testimony is then only admissible if it is both (1) reliable, and (2) relevant. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590-91 (1993).

The Court should exclude the testimony of Engenium's expert because the testimony offered is neither reliable nor helpful to the jury. The expert's opinion is based on allegedly copied Symphonic code that only makes up 5% of the Engenium Scheduling Workbench Code as it existed in 2010, yet the expert claims this two codes are "identical."[1]

## I. Objection: Expert report is unverified

Expert reports must be verified under Fed. R. Civ. P. 26(a)(2)(B). Muppavarapu (the Expert)'s report is not verified as evidenced by the absence of his signature in the report. Without verification, the report is inadmissible under the rules of evidence.

## II. Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) , the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

---

[1] Expert Report of Krishna Muppavarapu, at 3. ("Expert Report"), filed with the Court under seal as Doc No. 123.

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert,* 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert,* 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir.2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert,* 509 U.S. at 594. In *Daubert,* the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone,* 288 F.3d at 244. When evaluating Daubert challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert*, 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is

committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir.2000) (citation omitted).

In order to be admissible, an expert's testimony must be (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) the principles and methods must be reliably applied to the facts of the case. Fed. R. Evid. 702.

### A. UNRELIABLE FOUNDATION

The Expert asserts the conclusion that the "*Harmonix* copied and modified the code from *Engenium*" despite the fact that the amount of code the Expert claims Symphonic copied only makes up 5% of the total amount of code found in Engenium's 2010 Scheduling Workbench.[2] On the other hand, out of the 27,313 lines of code found in Symphonic's *Harmonix*, the expert only analyzes 1% of the code in his report.[3] The expert's sweeping legal conclusions are unreliable because they based on an insufficient amount of code thus the sample size not only misstates the source of the appearance of similarity but also wholly skews the picture and will prejudice the presentation to the fact finder. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (expert excluded when he could not provide a sufficient amount of data or valid explanation of his theory); *Rudd v. Gen. Motors Corp.*, 127 F. Supp. 2d 1330, 1339 (M.D. Ala. 2001) (the quantity of facts used plays a role in whether the expert's testimony is reliable).

Additionally, the unreliability of the Expert permeates the report because of the report neglects the basis of many of the similarities between the two codes—SAP

---

[2] Declaration of Iain Ross at 3, attached as Exhibit A, referenced as "Ross Decl."
[3] *Id.* at 4.

industry standard coding and the technical coding requirements in EVERY program designed to run SAP software.[4] All codes designed for operation with SAP <u>must</u> contain certain codes for compatibility and ease of transition by end-users between different companies' software products.[5] Instead, the Expert claims certain codes are "Engenium copyright" merely because they have prefixes such as "ENGO."[6] These conclusions give the bare analysis of similar coding but fail to address the reason for the similar coding is that SAP and NOT Engenium owns the code and grants rights for code usage to the individual companies who purchase licenses from SAP then design software to work alongside the SAP systems.[7]

The expert's failure to address the big picture and skew the facts based on an insufficient sample size of code and the report's failure to address the SAP origin of much of the software renders the proffered report unreliable and irrelevant to the case. *See Pipetone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (referencing Fed. R. Evid. 401, evidence is not relevant unless it fails to make the existence of any fact at issue more or less probably than it would be without the evidence).

### B. INDIVIDUAL MISCHARACTERIZATIONS

A few of the Expert's conclusions stand out as more glaring oversights than the others. Many of the allegations of "column headings" and other appearance related comparisons made by the Expert are fundamental features in SAP owned software.[8]

---

[4] *Id.*
[5] *Id.*
[6] Expert Report at 19.
[7] Ross Decl.
[8] *Id.*

Moreover, the industry terms discussed screen shot 25 are SAP industry terms used in many other companies' in the SAP industry.[9] Moving into more intricate pieces of the actual coding, the "Selection Screen" claimed as identical is in fact identical…because it comes directly from SAP's programming code and is used by many other SAP software companies.[10] Both programs also use a line of code noted as "RIAUFMVK," which is also commonly used throughout the SAP industry, is written by SAP, yet is still claimed by the Expert in screen shot 34.[11] Many other comparable issues litter the Expert's Report and all lead to the only viable conclusion: the report lacks in sufficient foundation for an accurate picture of the two program's code. Even more telling is that out of the similarities the Expert pointed out from a deficient sample size, a vast majority of them derive directly from SAP industry software and NOT from any original authors; especially not from either Engenium or Symphonic employees.

## C. CONCLUSION

The proffered expert adds nothing. His reliance upon an inadequate sample size and his disregard for the SAP's ownership of many of the highlighted similarities demonstrates the unreliability and irrelevance of the Expert's testimony and report. The unreliable foundation is only the beginning of the cascade of errors and flawed impermissible leaps in logic in which he engages in order to reach a preordained result. Speculation and guess and improper assumptions permeate his report and his conclusory statements based upon improper (or no) foundation do not aid the fact

---

[9] Expert Rep. at 31 *with* Ross Decl. at 19.
[10] Ross Decl. at 13.
[11] Expert Rep. at 36; Ross Decl. at 22.

finder at all. The expert's proffered testimony should be disallowed. Defendants so pray.

| | |
|---|---|
| December 21, 2012 | Respectfully submitted, |
| | MYERS✲HILL |
| | By:____/s/ Mark C. Hill_____<br>Mark C. Hill<br>Attorney-in-Charge<br>SBN: 09647400<br>FIN: 11641<br>Robert J. Myers<br>SBN 14765380 |
| Of Counsel: | MYERS✲HILL<br>2525 Ridgmar Blvd., Suite 150<br>Fort Worth, Texas 76116 |
| | *Attorneys for Defendants Steve Carr and Symphonic Technologies, Inc.* |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent as indicated to counsel listed below on this 21st day of December, 2012.

Charles M.R. Vethan
The Vethan Law Firm, PC
3501 Allen Parkway
Houston, TX 77019
**VIA ECF and US MAIL**

_____/s/ Mark C. Hill_____
Mark C. Hill